# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. '22 MJ3377
Instagram account username "josxocho" that is stored at )
premises controlled by Meta Platforms Inc. )
1601 Willow Road, Menlo Park, CA 94025 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kaitlyn Jones*
Applicant's signature

Kaitlyn Jones, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

*Mitchell D. Dembin*
Judge's signature

Date: September 19, 2022

City and state: San Diego, California    Hon. Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

Meta Platforms, Inc. (owns Facebook and Instagram) is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 1601 Willow Road, Menlo Park, CA 94025.

Meta Platforms, Inc. hosts the fallowing electronic communication accounts that are the subject of this search warrant and application:

    a.    Instagram Account with vanity name "josxocho"

# ATTACHMENT B

## ITEMS TO BE SEIZED

I.   Service of Warrant

The agent executing the warrant shall permit Meta Platforms, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the agent.

II.   Information to be disclosed by Meta Platforms, Inc.

All subscriber and/or user information and content, all electronic communications, images, instant messages, histories, call logs, contacts or friend lists, profiles, method of payment, access logs, backup data, transactional data, and any other files or records associated with the following account and screen names:

"josxocho"

III.   The search of the data supplied by Meta Platforms, Inc. pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of May 19, 2022 to August 19, 2022, and to the seizure of:

  a. Communications, records, and attachments tending to indicate efforts to import controlled substances from Mexico into the United States and traffic controlled substances;

  b. Communications, records, and attachments tending to identify additional types of communications, records, and attachments tending to identify evidence of illegal activity related to the importation of controlled substances from Mexico into the United States and trafficking of controlled substances;

   c. Logs, photos, postings, "likes," activity, and records tending to indicate efforts to import controlled substances from Mexico into the United States and traffic controlled substances;

   d. Communications, records, and attachments tending to identify other co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and trafficking of controlled substances;

   e. Communications, records, and attachments tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   f. Evidence indicating the Instagram account holder's whereabouts and locations relevant to identifying locations where drug-smuggling activity occurs;

   g. Communications, records, and attachments tending to identify the user of, or persons with control over or access to, the Target Device; and

   h. Communications, records, and attachments that provide context to any communications described above, such as electronic messages sent or received, posts, likes, or any activity in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts;

which are evidence of crimes, violations of Title 21, United States Code, Sections 952, 960, and 963.

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Kaitlyn Jones, being duly sworn, hereby depose and state as follows:

**BACKGROUND AND EXPERIENCE**

1. I am a Special Agent with Homeland Security Investigations and have been since June of 2019. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California, and I investigate criminal violations relating to drug trafficking, including, but not limited to, violations arising from 21 U.S.C. §§ 952, 960 – Importation of Controlled Substances. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

2. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 952, 960, and 963 have been committed by Jose OCHOA Ortega as well as persons unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

**PURPOSE**

5. This affidavit supports an application by the United States of America for a search warrant for Meta Platforms Inc., located at 1601 Willow Road Menlo Park, CA 94025, as described in Attachment A, to search the below-listed Instagram account from May 19, 2022 to August 19, 2022, for items that constitute evidence of violations of federal

criminal law, namely conspiracy to commit drug trafficking and drug trafficking, in violation of Title 21, United States Code, Sections 952, 960, and 963, as described in Attachment B:

    a.      Instagram Account with vanity name "josxocho"

6. The facts set forth in this affidavit are based on my own investigation, oral and written reports by other law enforcement officers, physical and electronic surveillance, interviews, subpoenaed and public records, database checks, searches, phone analysis, and other investigations. Since this affidavit is for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Dates and times are approximate.

## **PROBABLE CAUSE**

7. On August 19, 2022, at approximately 8:15 P.M., Jose Antonio OCHOA Ortega, ("OCHOA"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #22. OCHOA was the driver, sole occupant, and registered owner of a 2009 Toyota Yaris ("the vehicle") bearing California license plates.

8. An Anti-Terrorism Contraband Enforcement Team (ATCET) was conducting pre-primary inspections. An ATCET Customs and Border Protection Officer (CBPO) received two negative Customs declarations from OCHOA. OCHOA stated he was crossing the border to go to "City Heights" in San Diego, California. While ATCET CBPO's inspected the vehicle, a Human and Narcotic Detection Dog alerted initially to the right engine compartment, and then to the battery of the vehicle.

9. During a subsequent scan, a CBPO operating the Z-Portal X-Ray machine detected anomalies in the battery area of the vehicle's engine compartment.

10. Further inspection of the vehicle resulted in the discovery of five packages concealed in the battery of the vehicle, with a total approximate weight of 6.04 kgs (13.31

2

AFFIDAVIT IN SUPPORT OF APPLICATION FOR
SEARCH WARRANT

lbs). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

11. OCHOA was placed under arrest at approximately 9:30 P.M. OCHOA was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

12. During the execution of a search warrant on OCHOA's cell phone, HSI agents identified OCHOA was utilizing the Instagram application with vanity name "josxocho" (hereinafter referred to as the "Target Account").

13. I know that based on my training and experience and discussion with other experienced narcotics officers, narcotics traffickers often use social media applications including Instagram to communicate with their co-conspirators to coordinate their illegal activity. Consistent with this, HSI agents observed conversations on the Target Account between OCHOA and the user of Instagram account with vanity name "jujus.cervantes". In one such message on July 19, 2022, the Instagram account with vanity name "jujus.cervantes" stated to OCHOA they had "just finished crossing like 40 keys of" followed by the snowflake emoticon.

14. Through my training and experience and discussion with other experienced narcotics officers, I know that "snow" is a common term used by narcotics traffickers as well as drug users to mean cocaine. Based on this information, I believe that the Instagram account with vanity name "jujus.cervantes" was telling OCHOA he had just smuggled forty kilograms of cocaine into the United States.

15. Based on my training and experience as well as conversations with other narcotics officers and agents, I know it is common for narcotics traffickers to be in contact with the drivers of vehicles loaded with narcotics via phone prior to and after the time of their border crossings. Furthermore, I know it is common for drivers to be told by the coordinators of the smuggling event to contact the coordinator via phone upon crossing the border and entering into the United States in order to receive further instruction. Because of this, drivers who are caught smuggling narcotics at the ports of entry frequently receive

numerous messages and calls from the individuals coordinating the movement of narcotics shortly after they are expected to have crossed the border into the United States. Consistent with this, on the date of his arrest, OCHOA received seven missed audio calls on the Instagram application from the Instagram account with vanity name "daniel_chevron" between 8:42 PM and 9:49 PM.

16. Based on the above information, there is probable cause to believe that Target Account was used to commit the crimes of 21 U.S.C. §§ 952 and 960, Importation of Controlled Substances.

17. Finally, given the facts of this affidavit, my understanding of how social-media accounts can be used in furtherance of the offenses as described herein, and my awareness that social media accounts can retain information for extended periods of time, I submit that this Court should authorize a search of the Target Account for the period of May 19, 2022, up to and including August 19, 2022. As stated above, I believe that OCHOA has utilized the Target Account to communicate with co-conspirators and to coordinate the importation and distribution of narcotics from Mexico into the United States.

18. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and communication applications. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro POE and the Otay Mesa POE. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporters regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporters to remotely monitor the progress of the narcotics, provide instructions, and warn accomplices about law

enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporters to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

19. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that communication applications, such as Instagram, can and often do contain electronic evidence, including, data, such as messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. Specifically, searches of social media platforms used by individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States and traffic controlled substances;
   b. tending to identify additional types of communications, records, and attachments tending to identify evidence of illegal activity related to the importation of controlled substances from Mexico into the United States and trafficking of controlled substances;
   c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and trafficking of controlled substances;
   d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;
   e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or
   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## GENUINE RISK OF DESTRUCTION OF EVIDENCE

20. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, if the subject receives advance warning of the execution of this warrant, there will be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN THE DATA

21. The United States has not attempted to obtain this data by other means except as described above.

## INSTAGRAM

22. Meta Platforms, Inc. is an Internet company that, among other things, provides electronic communication services to its subscribers. Meta Platforms, Inc. is the parent company of Instagram. Instagram is a free photo and video sharing application, which allows its subscribers to exchange electronic communications with others through the Internet.

23. Subscribers to Instagram use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Meta Platforms, Inc. requires users to subscribe for a free Instagram account, Meta Platforms, Inc. does not verify the information provided by the subscriber for its free services. Instagram asks users to provide basic contact and personal identifying information. This information may include the user's full name, birth date, gender, contact e-mail addresses, Instagram passwords, Instagram security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

24. Instagram permits users to post photos to their profiles and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo a caption, various "tags" that can be used to search for the photo, location

6

AFFIDAVIT IN SUPPORT OF APPLICATION FOR
SEARCH WARRANT

information, and other information. In addition, Instagram allows users to make comments on posted photos and "like" photos. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

25. At the creation of an Instagram account and for each subsequent access to the account, Instagram logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Instagram account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

26. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Meta Platforms, Inc. are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Meta Platforms, Inc. for the relevant accounts and then to analyze the contents of those accounts on the premises of Meta Platforms, Inc. The impact on Meta Platforms, Inc.'s business would be disruptive and severe.

27. Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs and any other content from the Instagram account, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Meta Platforms, Inc., to protect the rights of Instagram subscribers

whose accounts are not authorized to be searched, and to effectively pursue this investigation, authority is sought to allow Meta Platforms, Inc. to make a digital copy of the entire contents of the accounts subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be forensically imaged, and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

28. Analyzing the data to be provided by Meta Platforms, Inc. may require special technical skills, equipment, and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. Meta Platforms, Inc. does not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

29. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained, and, depending on the organization, format, and language of the records provided by Meta Platforms, Inc., examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination

8

AFFIDAVIT IN SUPPORT OF APPLICATION FOR
SEARCH WARRANT

will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this Court.

30. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic records that identify any users of the subject accounts and any electronic data sent or received in temporal proximity to incriminating electronic data that provide context to the incriminating data.

31. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

32. Based on the foregoing, there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960, and 963.

_____
KAITLYN JONES
Special Agent
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1 on September 19, 2022.

_____
HONORABLE MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE